**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **NABEEL IQBAL** | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | **CIVIL ACTION NO.: 4:19−cv−03608** |
| | § | |
| | § | |
| **THE CITY OF PASADENA and DANIEL** | § | |
| **PENNINGTON** | § | |
| | § | **JURY DEMANDED** |
| *Defendants.* | § | |
| | § | |
| | § | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM**

---

TO THE HONORALBE JUDGE OF SAID COURT:

Plaintiff, Nabeel Iqbal, ("Plaintiff") files this Response to Defendants' Federal Rule of Civil procedure Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, and requests that the Court deny Defendants' motion.

Respectfully Submitted,
TB Robinson Law Group, PLLC

Terrence B. Robinson, Attorney-In-Charge
Fed. Bar No. 14218
Texas Bar No. 17112900
Email: TRobinson@TBRobinsonlaw.com
Romin Tamanna
Fed. Bar No. 3355463
Texas Bar No. 24108971
Email: RTamanna@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Phone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEYS FOR PLAINTIFF**

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES** ......................................................................................... iv

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM** .................................................................................................. 1

**I.  NATURE AND STAGE OF THE PROCEEDING** ............................................. 1

**II.  STANDARD OF REVIEW** ................................................................................. 2

**III.  ARGUMENTS AND AUTHORITIES** ............................................................. 4

    **A.  Plaintiff asserts a viable claim under the ADA** .......................................... 4

        *i.  Plaintiff pleads sufficient facts showing discrimination under the ADA.* ..................... 4
        *ii.  Defendants' cited cases; i.e. Lottinger and Burch are inapplicable to this case* ......... 6
        *iii.  Defendants' violated the ADA by not considering Plaintiff's disability as per EEOC
Guidelines* ................................................................................................................. 8
        *iv.  Plaintiff establishes a failure to accommodate claim under the ADA.* ........................ 9

    **B.  Defendant Pennington is liable under the ADA.** ...................................... 12

    **C.  Plaintiff pleads sufficient facts to state a due process claim** .................... 14

    **D.  Defendant Daniel Pennington is not entitled to qualified immunity, and is liable, in
his individual capacity, under §1983 due to his objectively unreasonable Acts** ............... 15

        *i.  Defendant Pennington violated Plaintiff's Statutory and Constitutional Right.* ........ 15
        *ii.  Description of Plaintiff's statutory / constitutional right.* .......................................... 16
        *iii.  Plaintiff's § 1983 rights were clearly established at the time of the discriminatory
act* ............................................................................................................................. 17

**IV.  CONCLUSION** ................................................................................................. 18

**CERTIFICATE OF SERVICE** ............................................................................... 19

# **TABLE OF AUTHORITIES**

## *Cases*

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 S.Ct. 2362 L.Ed.2d 280 (1975) ........................... 12

*Anderson v. Creighton*, 483 U.S. 635 S.Ct. 3034 L.Ed.2d 523 (1987) ........................................ 16

*Ashcroft v. al-Kidd, 563 U.S. 731 S. Ct. 2074 L. Ed. 2d 1149 (2011)* ......................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 S.Ct. 1937, 1949 (2009) ........................................................ 2, 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 S.Ct. 1955 (2007) .............................................. 2, 3

*Bellow v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, et al.*, 2014 WL 2203881 (D. Louisiana.2014) ........................................................... 15

*Burch v. Coca-Cola Co.*, 119 F.3d 305 n. 14 (5th Cir. 1997) .................................................... 6, 7

*Chesser v. Sparks*, 248 F.3d 1117 (11th Cir.2001) ..................................................................... 3

*Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000) .............................. 2, 3

*Conley v. Gibson,* 355 U.S. 41 S.Ct. 99, 2 L.Ed.2d 80 ................................................................. 2

*Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223 (6th Cir. 2005) ....................................................................................................................................... 3

*Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450 (Fifth Cir. 2013) ..... 10

*Gambini v. Total Renal Care, Inc.,* 486 F.3d 1087 (9th Cir. 2007) ............................................... 7

*Griffith v. Keystone Steel & Wire Co.*, 858 F. Supp (1994) ........................................................ 12

*Grose v. Caruso*, 284 Fed. Appx. 279 (6th Cir.2008) ................................................................. 3

*Hamilton v. Rodgers,* 791 F.2d 439 (5th Cir. 1986) ................................................................... 12

*Harlow v. Fitzgerald*, 457 U.S. 800 S.Ct. 2727 L.Ed.2d 396 (1982) ................................ 3, 16, 17

*Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872 (5th Cir.2004) ................................................................................................................................. 16

*Hope v. Pelzer*, 536 U.S. 730 S.Ct. 2508 L.Ed.2d 666 (2002) .................................................... 16

*Humphrey v. Memorial Hospitals Ass'n,* 239 F.3d 1128 (9th Cir.2001) ....................................... 7

*Jacobs v. City of Chicago*, 215 F.3d 758 (7th Cir.2000) .............................................................. 3

*Jeffrey Alan Williamson v. American National Insurance Company,* 695 F.Supp.2d 431(S.D. Tex. 2010) ................................................................................................................. 4

*Jendusa v. Cancer Treatment Centers of America, Inc.;* 868 F.Supp. 1006 (N.D. Ill. 1994) 12, 13

Jones v. Metropolitan Denver Sewage Disposal District, 537 F.Supp. 966 (D.Colo.1982) ......... 12

*Kinney v. Weaver*, 367 F.3d 337 (5th Cir. 2004) ......................................................... 16

*Lottinger v. Shell Oil Co.*, 143 F.Supp. 2d 743 (S.D. Tex. 2001) ................................. 6, 7

*Manguno v. Prudential Prop. And Cas. Ins. Co.,* 276 F.3d 720 (5th Cir. 2002) ........................... 2

*Mathews v. Eldridge*, 424 U.S. 319 (1976) .................................................................. 14

*McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir.2002) (en banc) (per curiam) ............... 16

Modica v. Taylor, 465 F.3d 174 (Fifth Cir. 2006) ......................................................... 15

*Pangelinan v. 7 Department of the Navy*, 2017 WL 67438 (nonprecedential) ............................ 14

*Riehl v. Foodmaker, Inc.*, 152 Wash.2d 138, 94 P.3d 930 (2004)(en banc) ................................. 7

*S.A. Vakilian v. Wesley Shaw*, et al., 335 F.3d (6th Cir. 2003) ................................. 3, 12

*Saucier v. Katz*, 533 U.S. at 201 S.Ct. 2151 (2001) ..................................................... 16

*Swarthout v. Cooke,* 131 S.Ct. 859 (2011) ................................................................. 14

*Taylor v. Food World, Inc*., No. 97-6017 (Brief filed with Eleventh Circuit, 4/30/97) ................ 8

*Wesley v. Campbell*, 779 F.3d 421 (6th Cir. 2015) ......................................................... 3

**Statutes**

42 U.S.C. § 12111 .................................................................................................. 12

42 U.S.C. § 12112 .................................................................................................. 12

42 U.S.C. § 1983 ............................................................................................. 1, 17, 18

42 U.S.C., §12101 ................................................................................................ 1, 4

Americans with Disabilities Act of 1990, § 101 .................................................... 13

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1, 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NABEEL IQBAL | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | CIVIL ACTION NO.: 4:19−cv−03608 |
| | § | |
| | § | |
| THE CITY OF PASADENA and DANIEL | § | |
| PENNINGTON | § | |
| | § | JURY DEMANDED |
| *Defendants.* | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

1.      Plaintiff, Nabeel Iqbal, files this Response to Defendants, the City of Pasadena and Daniel Pennington's Motion to Dismiss for Failure to State a Claim (Document No. 5), and would show the court as follows:

## I.  NATURE AND STAGE OF THE PROCEEDING

2.      This action is filed pursuant to the Americans with Disabilities Act, 42 U.S.C., §12101, et. seq. ("ADA"), pursuant to 42 U.S.C. § 1983, and pursuant to the U.S Constitution and the Texas Constitution to remedy acts of employment discrimination, failure to accommodate, failure to accord due process perpetrated against the Plaintiff, and to remedy violation of the laws of the United States.

3.      On November 12, 2019, Defendants filed a Motion to Dismiss for failure to State a Claim under Fed. R. Civ. P. 12(b)(6). Plaintiff now files this Response to Defendants' Motion to Dismiss for Failure to State a claim.

## II.  <u>STANDARD OF REVIEW</u>

4.      Under Rule 12(b)(6), a claim may be dismissed when the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering such a motion to dismiss, the court must determine whether the complaint states any valid claim for relief **in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf.** *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000). **The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true.** *Manguno v. Prudential Prop. And Cas. Ins. Co.,* 276 F.3d 720, 725 (5th Cir. 2002).

5.      In their Motion to Dismiss (*Doc. 5, ¶ 5*), Defendants allege that  "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face," quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). In *Twombly,* the Supreme Court, while considering the question of what a plaintiff must plead in order to state a claim, reiterated that Federal Rule of Civil Procedure 8(a)(2) requires only "**a short and plain statement of the claim showing that the pleader is entitled to relief,**" in order to "**give the defendant fair notice of what the ... claim is and the grounds upon which it rests**," (Quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80). The court further stated that "[d]etailed factual allegations" are not required, but the Rule does call for **sufficient** factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S., at 555, 570 127 S.Ct. 1955. A claim has facial plausibility when the pleaded factual content allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged. (quoted in *Ashcroft v. Iqbal,* 129 S.Ct. 1937). "**Asking for plausible grounds does not impose a**

probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.*

6.      Accordingly, Rule 12(b)(6) motions, which are generally viewed with disfavor[1], cannot be used to resolve factual issues or case merits, as this motion is only appropriate where a plaintiff has failed to give fair notice of its claim and allegations that, if taken as true, are plausible and rise above mere speculation.[2] Applying this standard, Defendants fail to meet their burden of proof to dismiss Plaintiff's claims.

7.      Furthermore, the use of a qualified immunity defense at the Rule 12(b)(6) stage is generally considered inappropriate due to the difficulty courts may face considering the "fact-intensive" nature of the tests, and therefore should typically be brought during the summary judgment stage.[3] In fact, it has been stated that, "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."[4] Several courts have held that the discussion of qualified immunity at the 12(b)(6) stage is premature due to a lack of discovery, thus the defense is best addressed at the summary judgment stage.[5] As such, Defendants' Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim with regards to a qualified immunity defense are premature and are more

---

[1] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000).

[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

[3] "Moreover, it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's "entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point," *Vakilian*, 335 F.3d at 516 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)), that point is usually summary judgment and not dismissal under Rule 12. *See Evans–Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir.2005) (Sutton, J., concurring) (observing that the fact-intensive nature of the applicable tests make it "difficult for a defendant to claim qualified immunity on the pleadings before discovery " (emphasis in original)) *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)

[4] *Id* at 434. (citing *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."))

[5] *Id* at 434. (citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir.2001) ( "[Q]ualified immunity is typically addressed at the summary judgment stage of the case."); *Grose v. Caruso*, 284 Fed. Appx. 279, 283 (6th Cir.2008) ("[T]he standard for a 12(b)(6) motion is whether the allegations, if taken as true, could state a claim upon which relief may be granted, [and] dismissal of Appellants on the basis of qualified immunity is premature."))

appropriately discussed at the summary judgment stage. Notwithstanding, Plaintiff provides the following arguments in response to Defendants' premature motion.

## III.  ARGUMENTS AND AUTHORITIES

### A.  Plaintiff asserts a viable claim under the ADA.

#### i.  *Plaintiff pleads sufficient facts showing discrimination under the ADA.*

8.       In the Original Complaint, Plaintiff pleads facts sufficient to show discrimination by the City of Pasadena and Daniel Pennington under the ADA. In order to prove a *prima facie* case of discrimination based on a disability, a plaintiff must show that (1) he has a disability or is regarded as disabled; (2) he is a qualified individual for the job in question; (3) he suffered an adverse employment action because of his disability or the perception of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq., *Jeffrey Alan Williamson v. American National Insurance Company,* 695 F.Supp.2d 431.

9.       As explained in Plaintiff's Original Complaint ¶17, Plaintiff has a disability within the meaning of the ADA; *i.e.* Autistic Spectrum Disorder and Anxiety Disorder NOS. Plaintiff is nevertheless qualified to perform the essential functions of his job, and has suffered an adverse employment action, termination, because of his disability. Finally, Plaintiff was treated less favorably than non-disabled employees as he received harsher disciplinary action; *i.e.* indefinite suspension leading to termination than other non-disabled employees who typically receive lesser disciplinary actions, such as, temporary suspension, enrollment in corrective classes, trainings and so on.

10.     Defendants, in their Motion to Dismiss for Failure to State a Claim (*Doc. 5 ¶1 and ¶8*), incorrectly state that Plaintiff admits that the City fired him because he committed lewd acts in the workplace. Rather, it is the contention of the plaintiff that it was due to his disability that he lacked the requisite mental capacity to comprehend the appropriateness of his actions at that time, and that Defendants failed, even after repeated requests, to engage in the interactive process or take Plaintiff's known disability into account while disciplining and terminating him.

11.     Plaintiff, through his guardian and father attempted to explain facts related to his disability and the conduct in question, to his employer but was not allowed to present any information prior to an ultimate employment decision (*Doc. 1 ¶ 24).* Despite knowing that Plaintiff is unable to effectively represent himself due to his diminished mental capacity, Defendant Pennington outrightly declined Plaintiff's father or an expert on Autistic Spectrum Disorder to be present when he was interrogated by a Police detective on the sexual harassment complaint. The entire interrogative meeting was conducted by the police detective with no means of representation accorded to Plaintiff. Clearly, Plaintiff was incapable of understanding his legal rights in such a context.

12.     However, an indefinite suspension and effective termination was implemented against the Plaintiff after conducting the flawed investigation, and without considering his disability or engaging in the ADA mandated interactive process. (*Doc 1 ¶ 33*).

13.     Plaintiff, thereafter, quickly appealed the termination decision to the City of Pasadena's Suspension Appeals Board on January 23, 2019 to have the decision of his indefinite suspension reconsidered in the light of his disability, his past record, and work ethic. However, the Defendants summarily rejected Plaintiff's appeal petition simply saying that he was not entitled to appeal and falsely claiming that he did not identify himself as a person with a disability at any time while

employed with the Defendants. However, as mentioned above, the City was informed of Plaintiff's disability at the time he began his employment in 2013. (*Doc 1 ¶ 35).*

14.     Later, Plaintiff became aware that his termination was scheduled to be confirmed in a City Council Meeting on February 5, 2019. To give it one more try and to raise his concerns to the City Council Members, Plaintiff prepared and sent a petition to the Defendants on February 1, 2019 with a request to disperse it among the City Council Members so that they could review it once before confirming his termination decision. However, this time too, the Defendants bluntly turned down Plaintiff's request to communicate the correspondence to any of the City Council Members. (*Doc 1 ¶ 36).*

15.     By engaging in all these discriminatory actions against Plaintiff, and by intentionally disregarding his disability despite repeated requests, Defendants discriminated against Plaintiff in violation of the ADA.

***ii.      Defendants' cited cases; i.e. Lottinger and Burch are inapplicable to this case.***

16.     Defendants cite Lottinger *v. Shell Oil Co.*, 143 F.Supp. 2d 743, 758 (S.D. Tex. 2001) and *Burch v. Coca-Cola Co..*, 119 F.3d 305, 320 n. 14 (5th Cir. 1997), in support of their claim that an employee is not insulated from adverse action under the ADA for misconduct committed in the workplace, even if his improper behavior is attributable to an impairment. Defendants' premise is, however, flawed and both of these cases are inapplicable to this one for the following reasons:

1)     Unlike this case, both *Lottinger* and Burch dealt with Plaintiffs who were alcoholics and sought protection under the ADA based on their alcoholism. In *Lottinger*, along with alcoholism, Plaintiff claimed disability based on his depression as well. Alcoholism is treated substantially differently than all other disabilities under the ADA, and the ADA

devises specific rules as to what actions employer may or may not do in terms of addressing alcoholism in workplace.

The courts in both cases concluded that Plaintiffs did not have a disability under the meaning of the ADA, thereby frustrating the connection of their alleged misconduct to their claimed disability. In contrast, Plaintiff in this case suffers from Autistic Spectrum Disorder & Anxiety Disorder NOS which clearly establish him as a person having a disability under the ADA.

2)  Second, both of these cited cases were decided before the ADA amendment of 2008 came into effect. PL 110-325 (S 3406) The ADA amendment now extends the scope and definition of the term "disability" and also affords greater protection to employees to are found to have disability under the ADA. For this reason, *Lottinger and Burch* are inapplicable to this case.

17.    The Ninth Circuit, while dealing with bipolar disorder an obsessive-compulsive disorder, decided that **conduct resulting from the disability ... is part of the disability and not a separate basis for termination**. *Gambini v. Total Renal Care, Inc.,* 486 F.3d 1087, quoting *Riehl v. Foodmaker, Inc.,* 152 Wash.2d 138, 94 P.3d 930, 938 (2004)(en banc). *Riehl* drew on the holding in *Humphrey v. Memorial Hospitals Ass'n,* 239 F.3d 1128, 1139–40 (9th Cir.2001), which in the context of the Americans With Disabilities Act ("ADA") similarly articulated that "**conduct resulting from a disability is considered part of the disability, rather than a separate basis for termination**." As a practical result of that rule, where an employee demonstrates a causal link between the disability-produced conduct and the termination, a jury must be instructed that it may find that the employee was terminated on the impermissible basis of her disability. *Gambini v. Total Renal Care, Inc.*

### iii. Defendants' violated the ADA by not considering Plaintiff's disability as per EEOC Guidelines.

18.     EEOC in its "*the Americans With Disabilities Act: Applying Performance and Conduct Standards To Employees With Disabilities*"[6], describes standards related to violation of a rule of conduct by an employee due to his disability. As set forth by the EEOC, an employer may not enforce certain professionalism rules against an individual who violated the rules as a result of disability, *unless* the rules are job-related and consistent with business necessity. For example, according to the EEOC, some "dress code" and "co-worker courtesy" rules would *not* be job-related and consistent with business necessity for an employee who "has no customer contact and does not come into regular contact with other employees." **In such a case, the EEOC believes it would be illegal for the employer to discipline someone who broke the rules as a result of a disability**. *EEOC Enforcement Guidance on the ADA and Psychiatric Disabilities, No. 915.002 (3/25/97), at p. 30.*

19.     The EEOC also has taken the position that other "professionalism" rules might not be job-related and consistent with business necessity. For example, in one case, a grocery store bagger with autism made loud and possibly inappropriate personal comments to customers. The EEOC stated that " **policy of not tolerating behavior such as the grocery bagger's" might not be job-related and consistent with business necessity**. EEOC's Amicus Curiae brief in *Taylor v. Food World, Inc*., No. 97-6017 (Brief filed with Eleventh Circuit, 4/30/97).

20.     In similar fashion, Plaintiff's alleged misconduct, which directly stemmed from his disability did not concern his job, neither was the policy consistent with business necessity. Plaintiff did not have any customer contact in his job role, nor did he intend to commit the alleged misconduct in the presence of customers or intentionally in the presence of other employees. As

---

[6] https://www.eeoc.gov/facts/performance-conduct.html#conduct.

such, the policies the Defendants allege that Plaintiff violated by engaging in misconduct were not specifically job-related nor consistent with Defendant City's business necessity.

21.     EEOC also states that employers may "prohibit inappropriate behavior between coworkers, such as, sending inappropriate or offensive e-mails (e.g., those containing profanity or messages that harass or threaten coworkers)," In this case, the Plaintiff clearly did not engage in inappropriate behavior with any other worker, nor did he intend to commit the misconduct in the presence of anyone else. The EEOC further cautioned that in cases involving "disruptive" behavior (caused by disability), it may be more "ambiguous" whether the rule is job-related and consistent with business necessity. This means that, in the minimum, the employer must tread this cautiously, and where appropriate, to engage in an interactive process. The EEOC has also stated that it would not be lawful to enforce a conduct rule against an employee whose mental disability causes him to talk to himself, where that behavior causes some co-workers to simply feel uncomfortable but does not prevent them from performing their jobs.

22.     Plaintiff never had any issues with his job performance, and engaged in this alleged, single event of misconduct over the course of five and half years working for the Defendant City. As seen, his behavior was not recurrent, and he was under the mistaken impression due to his disability that he was secluded from his other co-workers.

### iv. Plaintiff establishes a failure to accommodate claim under the ADA.

23.     In order to establish a prima facie case of failure to accommodate, a plaintiff has to prove that 1) he has a disability; 2) the disability and its consequential limitations were known by the employer; 3) there was an accommodation available that would have been effective and would not have posed an undue hardship to the employer; and 4) the employer failed to provide an

accommodation. *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450 (Fifth Cir. 2013).

24.     As discussed above, Plaintiff has a disability within the meaning of the ADA as he suffers from Autistic Spectrum Disorder and Anxiety Disorder NOS.

25.     From the very beginning of Plaintiff's employment in 2013, the Defendant City was informed of his said disability. Such knowledge of his disability by the Defendant City is supported by various verbal and email communications between Plaintiff's father and the City staff related to Plaintiff's health insurance coverage as a disabled person as well as his satisfactory job performance despite his disability.

26.     Defendants inaccurately claim in their Motion to Dismiss that Plaintiff failed to request an accommodation from the City. To the contrary, as set forth in the original Complaint *(Doc. 1 ¶27 - ¶29)*, Plaintiff did remind the Defendants of his disability and clearly requested an accommodation during the investigation and interrogatory process conducted against him. Specifically, given his disability, Plaintiff's guardian / representative – his father requested to be present during the interrogatory session, and also suggested the possibility of having an expert on Autistic Spectrum Disorder present in there. Plaintiff's father was thereafter promised by Defendant Pennington that he would be allowed to attend the meeting, and so would be Plaintiff's Supervisor.

27.     However, shortly thereafter, Defendant Pennington rebuffed Plaintiff's father saying that "[i]f your son can work full-time, he should be able to handle it on his own." Despite these requests to accommodate Plaintiff's disability, neither Plaintiff's father not his supervisor was allowed to take part in the meeting. Defendants also turned down the request to have his doctor or other experts on Autistic Spectrum Disorder present in the meeting.  The meeting ultimately proceeded

with only the Police Detective and the Acting Director of the Library.  Thus, no accommodation for his disability was even afforded Plaintiff in the form of representation during the investigation process.

28.     As would be expected based on his disability, any changes in routine or unexpected events are likely to generate stress and anxiety upon the Plaintiff. He was tremendously frightened and anxious as a result of the police interrogation, and because of the fact that neither his father nor his supervisor were there with him. During the whole investigation process, as well as the interrogatory session, Plaintiff was not given the opportunity to defend himself effectively. Because of the mental disorders Plaintiff suffers, he needed someone to represent him and to have his side of the story heard, especially at the interrogative meeting. The entire interrogative meeting was conducted by the police detective in the absence of Plaintiff's father or his Supervisor which was even more intimidating for him. As stated above, the acting Director was present but did not play any role in the investigation. Clearly, Plaintiff was incapable of understanding his legal rights in such a context or to communicate effectively given his diminished capacity resulting from his known disability.

29.     Defendants could have granted the Plaintiff an accommodation without any hardship, by way of allowing him to be represented either by his guardian or legal representative during the investigation process and also by taking into consideration of his disability while finalizing any disciplinary action against him. Defendants, however, failed to provide the requested accommodation to the Plaintiff, and as such violated the ADA.

**B.      Defendant Pennington is liable under the ADA.**

30.      Defendant Pennington cannot evade liability for intentional discrimination as perpetrated on Plaintiff under the ADA. The ADA prohibits a "covered entity" from discriminating. 42 U.S.C. § 12112(a). The definition of a "covered entity" includes "an employer," 42 U.S.C. § 12111(2), which is defined, in turn, as "a person engaged in an industry affecting commerce who has [25] or more employees ... **and any agent of such person**." 42 U.S.C. § 12111(5)(A) (as quoted in *Jendusa v. Cancer Treatment Centers of America, Inc.;* 868 F.Supp. 1006). By incorporating "agents" within the definition of "employers," the plain language of the statute appears to subject individuals to liability for engaging in unlawful employment discrimination. The court finds such a reading of the statute to be most consistent with Congress' intent in enacting antidiscrimination legislation—*viz.,* deterring discriminatory employment practices and ensuring that complete justice is secured by victims of discrimination. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–418, 95 S.Ct. 2362, 2371–72, 45 L.Ed.2d 280 (1975). *See Vakharia,* 824 F.Supp. at 785; *\*1011 Griffith,* 858 F.Supp. at 805.[7]

31.      While the Fifth Circuit has not yet addressed the issue of individual liability under the ADA, it has decided in *Hamilton v. Rodgers,* 791 F.2d 439 (5th Cir. 1986) that "in ascertaining the scope of agency, we have recognized that Title VII "should be accorded a liberal interpretation in order to effectuate the purpose of Congress to eliminate the inconvenience, unfairness, and humiliation of ethnic discrimination…We agree with the view that "[a] person is an agent under § 2000e(b) if he participated in the decision-making process that forms the basis of the discrimination. *Id*; *Jones v. Metropolitan Denver Sewage Disposal District,* 537 F.Supp. 966, 970 (D.Colo.1982). To hold otherwise would encourage supervisory personnel to believe that they may violate Title VII with impunity. *Rodgers.*

32.   In *Jendusa v. Cancer Treatment Centers of America, Inc.;* 868 F.Supp. 1006, (D.Illinois.1994)  it was held that agents of employer may be held individually liable for engaging in unlawful discrimination, and thus actions against decision-making personnel may be maintained under ADA; this result is necessary in order to effectuate Congress' intent in enacting ADA, and to give antidiscrimination statutes their full deterrent effect. Americans with Disabilities Act of 1990, § 101(5).

33.   Defendant Pennington actively engaged himself in the discriminatory action against Plaintiff under the ADA and failed to accommodate his disability. As the Director of Human Resources, he was instrumental in conducting investigation against the Plaintiff, and finally recommended Plaintiff's indefinite suspension leading to termination without any regard toward his disability. Finally, because Defendant Pennington acted as an agent of the City, he squarely falls within the definition of an "employer" under the ADA, thereby making himself individually liable under the ADA.

34.   In *Spurling v. C&M Fine Pack, Inc.,* 739. F.3d 1055 (7th Cir. 2014), the court held that the employer potentially violated the ADA by firing the employee after she had been suspended for sleeping on the job, where it started the ADA interactive process after suspension, but then disregarded her doctor's note (indicating possible disability) and fired her anyway. The court stated that "while it is true that" the employee presented the information "after receiving her Suspension Pending Termination, she did so at [the employer's] behest." Therefore, the employer "properly began the interactive process as envisioned by the ADA but failed to carry it through."

35.   Likewise, the Defendants in this case should have provided the Plaintiff reasonable accommodation, and in the minimum, should have begun the ADA interactive process.

**C.      Plaintiff pleads sufficient facts to state a due process claim.**

36.      In the Original Complaint, Plaintiff sufficiently alleges facts to state a due process claim. The right to due process is established by the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution, which prohibit the government from depriving any person of life, liberty or property interest, without due process of law. Public employees generally have a reasonable expectation of continued employment and therefore have a property interest in their positions. Such employees are entitled to due process including notice and some kind of hearing prior to a discharge. *Cleveland Board of Education v. Loudermill,* 105 S.Ct. 1487.

37.      To assess whether an individual was denied procedural due process, courts engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process. *Swarthout v. Cooke,* 131 S.Ct. 859.

38.      Contrary to Defendants' allegations, Plaintiff maintains that he had a property interest in his continued employment with the City. This property interest to his employment further arises from the fact that he was employed with the City for approximately five and half years and was promoted to a full-time employee before he was terminated. Because Plaintiff had a property interest in his continued employment, he was entitled to due process, and such due process required at a minimum, that the Plaintiff be given the opportunity to be heard at a meaningful time and in a meaningful manner. *Pangelinan v. 7 Department of the Navy*, 2017 WL 67438, ¶ 6, (nonprecedential), (citing Mathews v. Eldridge, 424 U.S. 319 (1976)).

39.      As explained fully in the Original Complaint ¶ 35, ¶ 36 and  ¶ 37, Plaintiff was not given any opportunity to be heard before he was terminated. Aggrieved, Plaintiff quickly appealed the termination decision to the City of Pasadena's Suspension Appeals Board on January 23, 2019 to

14

have the decision of his indefinite suspension reconsidered in the light of his disability, his past record, and work ethic. However, the Defendants summarily rejected Plaintiff's appeal petition simply saying that he was not entitled to appeal and falsely claiming that he did not identify himself as a person with a disability at any time while employed with the Defendants.

40.     Later, Plaintiff became aware that his termination was scheduled to be confirmed in a City Council Meeting on February 5, 2019. To give it one more try and to raise his concerns to the City Council Members, Plaintiff prepared and sent a petition to the Defendants on February 1, 2019 with a request to disperse it among the City Council Members so that they could review it once before confirming his termination decision. However, this time too, the Defendants bluntly turned down Plaintiff's request to communicate the correspondence to any of the City Council Members.

41.     As explained, Defendants have clearly failed to provide Plaintiff with the due process afforded to other City employees and which he was entitled to during the investigation, interrogation and termination process, and thus violated the Fifth and Fourteenth Amendment of the U.S. Constitution.

**D.      Defendant Daniel Pennington is not entitled to qualified immunity, and is liable, in his individual capacity, under §1983 due to his objectively unreasonable Acts.**

   ***i.    Defendant Pennington violated Plaintiff's Statutory and Constitutional Right.***

42.     The Fifth Circuit explained the framework for determining whether or not qualified immunity immunizes a public official from suit in *Modica v. Taylor.*[7] The court stated that, [t]he doctrine of qualified immunity immunizes government officials acting within their discretionary authority from civil damages if their conduct does not violate clearly established statutory or

---

[7] See *Bellow v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, et al.*, 2014 WL 2203881 (D. Louisiana.2014).

constitutional law of which a reasonable person would have known. *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.,* 380 F.3d 872, 879 (5th Cir.2004).

43.     Generally, governmental employees are shielded from liability via qualified immunity for acts performed in their discretionary functions; however, as stated by the Supreme Court in *Ashcroft v. al-Kidd,* this immunity can be overcome by a showing of the following:

> "(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct."[8]

44.     In discussing what constitutes a "clearly established right," the Supreme Court has stated that public officials can be held liable as long as they were given "fair warning" that their conduct was impermissible. *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) ("[T]he right the official is alleged to have violated must ... be sufficiently clear that a reasonable official would understand that [his actions] violate[ ] that right. [The action does not have to have] previously been held unlawful, [but rather] in the light of pre-existing law the unlawfulness must be apparent."

### ii.   Description of Plaintiff's statutory / constitutional right.

45.     Moreover, viewed in a light most favorable to the plaintiff, the first part of this two-part test requires a plaintiff to establish that the challenged conduct would amount to a violation of federal law.[9] Defendant Pennington violated Plaintiff's statutory right by depriving him of his

---

[8] *Ashcroft v. al-Kidd,* 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

[9] "Therefore, before engaging in the inquiry into whether the official unreasonably violated clearly established law, we should first determine whether the challenged conduct, viewed in the light most favorable to the plaintiff, would actually amount to a violation of federal law in the first place. *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. In conducting this initial inquiry, we employ currently applicable constitutional standards." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc) (per curiam)).

rights under the ADA as well as his right to due process in violation of §1983. As explained in the Original Complaint ¶ 48 and ¶ 49, Defendant Pennington deprived Plaintiff of the rights and privileges secured by the Unites States Constitution and the Texas Constitution. Defendant Pennington has failed and refused to afford Plaintiff due process in the form of hearing, right to appeal, opportunity to be represented during the investigation process, in blatant disregard for Plaintiff's well-established rights. Thus, Defendant Pennington's actions were a clear violation of §1983, which prohibits deprivation of any statutorily or Constitutionally secured rights.[10]

### iii.  Plaintiff's § 1983 rights were clearly established at the time of the discriminatory act.

46.      As previously stated, the second part of this two-part test requires a plaintiff to show that he had a clearly established right at the time of the challenged conduct.[11] As is evident through the clear language of §1983, Defendant Pennington had fair warning of Plaintiff's clearly established right. 42 U.S.C. §1983 provides the following:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section,

---

[10] 42 US.C. §1983.
[11] *Ashcroft v. al-Kidd, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).*

any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."[12]

47.     At issue here is whether Plaintiff can overcome an assumption of qualified immunity by proving that he had a clearly established right at the time of the challenged conduct. It appears that such a right was clearly established. As it stands, at the time of his discriminatory act, Defendant Pennington had fair notice that his action was a violation of a clearly established right. Not only is the language of §1983's language so specific that it leaves little if any room for discussion regarding to whom the statute applies, but it has been long established that Defendant Pennington's conduct was prohibited. As such, Defendant Pennington unreasonably violated Plaintiff's rights in violation of §1983, thus disqualifying him from qualified immunity. As such, Defendant Pennington fails to meet his burden of proof for this motion to dismiss.

## IV.    <u>CONCLUSION</u>

For these reasons, Defendants have failed to meet their burden to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure by failing to prove that Plaintiff fails to assert claims upon which relief may be granted.

As such, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss for Failure to State a Claim.

---

[12] 42 U.S.C. §1983

Respectfully Submitted,
TB Robinson Law Group, PLLC

Terrence B. Robinson, Attorney-In-Charge
Fed. Bar No. 14218
Texas Bar No. 17112900
Email: TRobinson@TBRobinsonlaw.com
Romin Tamanna
Fed. Bar No. 3355463
Texas Bar No. 24108971
Email: RTamanna@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Phone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEYS FOR PLAINTIFF**

## Certificate of Service

I hereby certify that on this 17th day of December 2019, the foregoing *Plaintiff's Response to Defendants' Motion to Dismiss for Failure to State a Claim* was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record via the CM/ECF service.

Respectfully Submitted,
TB Robinson Law Group, PLLC

Terrence B. Robinson