# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| NABEEL IQBAL, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-19-3608 |
| | § | |
| CITY OF PASADENA & DANIEL PENNINGTON, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Defendants'—City of Pasadena ("the City") and Daniel Pennington's (collectively, "Defendants")—motion to dismiss (Dkt. 5) plaintiff Nabeel Iqbal's complaint (Dkt. 1). Iqbal responded (Dkt. 13) and Defendants replied (Dkt. 17). This motion is ripe for consideration. Having considered the pleadings and the applicable law, the court finds that Defendants' motion to dismiss (Dkt. 5) should be **DENIED IN PART** and **GRANTED IN PART**. Specifically, Defendants' motion (Dkt. 5) should be denied as to Iqbal's ADA claims against the City, but granted as to Iqbal's due process claims against the City, and all claims against Pennington.

## I. BACKGROUND

This case stems from the January 9, 2019 termination of Iqbal's employment as a full-time shelver at the Pasadena Public Library. Dkt. 1 ¶¶ 13, 16, 30. Iqbal was terminated for violating the City's policies regarding sexual harassment, criminal acts, and level of conduct. *Id.* ¶ 31. The violations in question arose from a December 26, 2018 incident in which Iqbal—while "watching a health examination YouTube video on his phone" in the break room—"became aroused and . . . began touching his private parts through his clothing." *Id.* ¶ 22. Unbeknownst to Iqbal, "another

employee entered the breakroom area and witnessed [Iqbal's] actions." *Id.* Approximately a week later, the City received a sexual harassment complaint against Iqbal. *Id.* ¶ 26.

Iqbal is a 35-year-old male with diagnosed Austism Spectrum Disorder and Anxiety Disorder NOS. *Id.* ¶ 17. As a result of his disability, Iqbal "suffers from some cognitive and self-help skill limitations," including a limited ability "to accurately read social and environmental cues and make appropriate responses." *Id.* Iqbal also displays "stereotypic and repetitive physical behaviors including rocking and packing, and his motor responses are sometimes slightly delayed." *Id.* The City has been aware of Iqbal's diagnosis since his employment began in 2013. *Id.* ¶ 19. Furthermore, Iqbal's "father was always named as the first contact, and acted as his representative should the Defendants need to communicate anything about Plaintiff or his employment." *Id.* ¶ 26.

Following receipt of the sexual harassment complaint, "Defendant Pennington informed [Iqbal's] father that the City was soon going to have a meeting with [Iqbal] and that he would be questioned by a Police Detective." *Id.* ¶ 27. Initially, Pennington assured Iqbal's father "that as Plaintiff's guardian / representative, his father could attend the meeting, and that so would [Iqbal's] Supervisor, Ms. Monakes." *Id.* When Iqbal's father suggested that an expert on Autism Spectrum Disorder should attend the meeting, "Defendant Pennington rebuffed him saying that 'if your son can work full-time, he should be able to handle it on his own.'" *Id.* On January, 9, 2019, the day of the meeting, neither Iqbal's father nor supervisor were allowed to take part. *Id.* ¶ 28. Instead, the meeting consisted of Iqbal, a police detective, and the Acting Director of the Library. *Id.*

No criminal charges were filed, but the City terminated Iqbal's employment that same day. *Id.* ¶¶ 30–31. A few weeks prior to these events, two other City employees were also "accused of sexual harassment and were disciplined by merely three to four days of suspension without pay and were required to attend classes on sexual harassment." *Id.* ¶ 32. Iqbal attempted to appeal his

termination to the City's Suspension Appeals Board, but was informed "that he was not entitled to appeal." *Id.* ¶ 35. The City also claims that Iqbal "did not identify himself as a person with a disability at any time while employed with the Defendants." *Id.* Finally, Defendants "turned down" Iqbal's request to communicate his petition to the City Council, which was responsible for confirming his termination. *Id.* ¶ 36.

On June 21, 2019, Iqbal filed a charge of discrimination with the Equal Employment Opportunity Commission, receiving a Notice of Right to Sue on July 1, 2019. *Id.* ¶¶ 10–11. On September 24, 2019, Iqbal filed suit against Defendants alleging claims of disability discrimination and failure to accommodate under the Americans with Disabilities Act (ADA), and violation of his right to due process under the U.S. and Texas Constitutions. Defendants have moved to dismiss all claims against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "When considering a motion to dismiss, the court accepts as true the well-pled factual allegations in the complaint, and construes them in the light most favorable to the plaintiff." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citing *McConathy v. Dr.Pepper/Seven Up Corp.*, 131 F.3d 558, 561 (5th Cir. 1998)). However, "'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice

to prevent a motion to dismiss.'" *Id.* (quoting *S. Christian Leadership Conference v. Supreme Court of the State of La.*, 252 F.3d 781, 786 (5th Cir. 2001)).

### III. ANALYSIS

#### A.      Discrimination Claim

To state a discrimination claim under the ADA, a plaintiff must allege facts showing "(1) that he has a disability; (2) that he was qualified for the job; and (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)). Although Defendants initially place the word "alleged" in front of the word "disability" in their pleadings, they do not actually contest that Iqbal has a disability. *See, e.g.*, Dkt. 5 ¶ 7. Nor do they contest Iqbal's qualifications as a shelver. Thus, the first two elements are satisfied. Defendants challenge only the third element, arguing that because Iqbal was terminated due to his misconduct, "which unquestionably warrants the separation of any employee's employment with the City," he fails to state a claim. *Id.* ¶ 11.

The court agrees with Defendants that Iqbal's misconduct constitutes a legitimate and non-discriminatory reason for terminating his employment, as required under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The court rejects Iqbal's arguments to the contrary (*see* Dkt. 13 ¶¶ 18–22), which fly in the face of common sense and a comprehensive reading of EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities, EEOC Notice Number 915.002 (Mar. 25, 2007) ("EEOC Guidance on Psychiatric Disabilities"). If "nothing in the ADA prevents an employer from maintaining a workplace free of violence or threats of violence, or from disciplining an employee who steals or destroys property," the same must be true of sexual harassing behavior.

4

EEOC Guidance on Psychiatric Disabilities ¶ 30. Accordingly, Iqbal's admission that he "became aroused and . . . began touching his private parts through his clothing" in the workplace (Dkt. 1 ¶ 22) constitutes a legitimate, non-discriminatory cause for Defendants' termination of his employment.

However, if Iqbal alleges facts showing that—despite the seeming legitimacy of Defendants' actions—this proffered reason is pretextual, then the burden shifts back to Defendants. *See LHC Grp., Inc.*, 773 F.3d at 702. "[O]ne possible way to prove nexus between the employee's disability and [his] termination" is to show that the employee "'was treated less favorably than non-disabled employees.'" *Id.* at 695–96 (quoting *Burch v. Coca–Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997)). Stated differently, "an employer may discipline an employee with a disability for engaging in such misconduct *if it would impose the same discipline on an employee without a disability*." EEOC Guidance on Psychiatric Disabilities ¶ 30 (emphasis added).

Here, Iqbal alleges that "two other employees who worked for the Defendant City were [also] accused of sexual harassment and were disciplined by merely three to four days of suspension without pay and were required to attend classes on sexual harassment." Dkt. 1 ¶ 32. To the extent Defendants might argue that these two employees are not good comparators—e.g., because the misconduct underlying the sexual harassment charges against these two employees was different in scope or kind from Iqbal's misconduct—those arguments are best made after discovery at summary judgment, not the pleading stage. Accordingly, Iqbal alleges enough facts, taken as true, to suggest that the proffered reason for his termination was mere pretext, thus stating a discrimination claim.

### B. Failure to Accommodate Claim

A "plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the

5

employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Again, Defendants do not contest that Iqbal is a "qualified individual with a disability." *See supra* at 4. Furthermore, Iqbal alleges that Defendants were aware of his disability. Dkt. 1 ¶ 19. Thus, this claim turns solely on whether Defendants failed to make reasonable accommodations.

The court reads Iqbal's complaint to allege two different accommodations that Defendants failed to provide. The first is Iqbal's request, made via his father, that Defendants "accommodate his disability by way of forgiving this single transgression and allowing his employment to continue." *Id.* ¶ 25. The second is Iqbal's request, again made via his father, that Iqbal "be represented either by his guardian or legal representative during the investigation process." *Id.* ¶ 46.

Defendants first claim that "forgiveness of prior misconduct otherwise warranting termination is not a 'reasonable accommodation.'" Dkt. 5 ¶ 13 (quoting *Green v. Medco Health Sols. of Tex., LLC*, 947 F. Supp. 2d 712, 729 (N.D. Tex. 2013)). On this point, the court agrees with Defendants. At least five federal circuits, including the Fifth Circuit, have held that "the ADAAA does not require employers to accommodate disabled employees by overlooking a past violation of a workplace rule, regardless of whether that violation was caused by the employee's disability." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017) (collecting cases). Accordingly, to the extent that Iqbal claims Defendants should have accommodated him "by way of forgiving this single transgression" (Dkt. 1 ¶ 25), that argument fails as a matter of law.

But Iqbal also requested accommodation in the form of representation during the investigation process. *Id.* ¶ 27. Here, Defendants' argument—that they cannot be liable for failing to accommodate Iqbal's representation request because Iqbal "did not personally request any accommodation" (Dkt. 5 ¶ 14)—finds *zero* support in the law. "The EEOC compliance manual

6

provides that 'a family member, friend, health professional, or other representative may request a reasonable accommodation on behalf of an individual with a disability.'" *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999) (finding that request by employee's son was sufficient "to trigger the [employer's] obligation to participate in the interactive process"). *See also Bultemeyer v. Fort Wayne Cmty. Sch.*, 100 F.3d 1281, 1286 (7th Cir. 1996) (finding a note from employee's physician sufficient to trigger the interactive process); *Feldman v. Law Enf't Assocs. Corp.*, 779 F. Supp. 2d 472, 489 (E.D.N.C. 2011) (finding that requests by employee's wife and attorney triggered the need to engage in the interactive process). Defendants' cherry-picked quotation from *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996), is unavailing. To start, *Taylor* is inapposite because no request for specific accommodations was made by anyone at all. 93 F.3d at 165. Moreover, even *Taylor* contemplates that a health-care provider could "suggest the reasonable accommodations." *Id.* Accordingly, the requests by Iqbal's father to have representatives at the meeting triggered Defendants' obligation to engage in the interactive process. The only question is whether the accommodation requested—representation at the meeting—was reasonable.

The Fifth Circuit has found that the "text [of the ADA] gives no indication that an accommodation must facilitate the essential functions of one's position." *Feist*, 730 F.3d at 453. Reasonable accommodations are "'[m]odifications or adjustments that enable a covered entity's employee with a disability to *enjoy equal benefits and privileges* of employment as are enjoyed by its other similarly situated employees without disabilities.'" *Id.* (quoting 29 C.F.R. § 1630.2(o)(1)(iii)). Here, Iqbal's father requested that Iqbal be afforded the presence of "his guardian or legal representative" during the investigative process. Dkt. 1 ¶ 46. The court assumes as true Iqbal's allegation that Defendants knew he suffered from cognitive and social limitations. *Id.* ¶ 17. Accordingly, Iqbal's father was only seeking an accommodation that would have put Iqbal on the

same footing as non-cognitively or socially impaired employees facing an internal and police investigation.

Defendants argue that Iqbal's "request for an accommodation was simply a request to explain why Plaintiff deserved a second-chance." Dkt. 17 ¶ 18. This argument ignores Defendants' duty to engage in the interactive process, and indicates that Defendants "tried to take hasty advantage of what [they] saw as an opportunity to rid itself of a problem, a disabled employee." *Bultemeyer*, 100 F.3d at 1286. In *Bultemeyer*, the Seventh Circuit found that the defendant-employer school district acted in bad faith where it received a request for accommodation via letter from the plaintiff-employee's physician following its decision to terminate the plaintiff's employment. The court noted that "[e]ven though the letter came after [the employer] decided to fire [the plaintiff], [the employer] could have used the opportunity it presented to reconsider the decision to terminate his employment and include [the plaintiff] and [his physician] in the discussions." *Id.* Defendants cannot terminate the interactive process and then claim with certainty that it would have been futile anyway. "'[N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability.'" *Id.* at 1285 (quoting *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996)). Accordingly, Defendants' argument fails to establish why Iqbal's request for representation was an unreasonable accommodation.

Equally ineffective is Defendants' attempt to characterize this request as nothing more than "the opportunity to provide an after-the[-]fact excuse." Dkt. 17 ¶ 17. This argument is betrayed by Pennington's statement to Iqbal's father that "if your son can work full time, he should be able to handle it on his own." Dkt. 1 ¶ 27. Such a retort overlooks the fact that—even if the outcome remained unchanged—a representative could have assisted Iqbal in navigating and understanding the investigative process in light of his cognitive and social limitations. In other words, having some

form of representation would have enabled Iqbal to "handle it" like other non-disabled employees. Moreover, Pennington's statement may evince a bad faith failure to communicate in the interactive process. *See Bultemeyer*, 100 F.3d at 1285 (quoting *Beck*, 75 F.3d at 1135) ("'A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.'"). Construing the facts in Iqbal's favor, the court finds that Iqbal has stated a claim of failure to accommodate for Defendants' refusal to afford him representation during the investigative process.

### C. ADA Claims Against Pennington

Defendants argue that "only the City, not Pennington, may be liable for" claims under the ADA. Dkt. 5 ¶ 15. Iqbal counters that "the plain language of the statute *appears* to subject individuals to liability for engaging in unlawful employment discrimination." Dkt. 13 ¶ 30 (citing 42 U.S.C. § 12111(5)(A)) (emphasis added). In support, Iqbal cites the reasoning of a 1994 case from the District of Illinois that was later repudiated by the Seventh Circuit. *See Jendusa v. Cancer Treatment Centers of Am., Inc.*, 868 F. Supp. 1006 (N.D. Ill. 1994). Rejecting the "Chicken Little-esque argument" espoused by Iqbal here—that "individual liability is essential to dissuade supervisors and other individuals from violating the law"—the Seventh Circuit became the first to "hold that individuals . . . cannot be liable under the ADA." *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995). Iqbal is correct that "the Fifth Circuit has not yet addressed the issue of individual liability under the ADA." Dkt. 13 ¶ 31. However, "the ADA definition of 'employer' mirrors the Title VII definition." *Franklin v. City of Slidell*, 936 F. Supp. 2d 691, 703 (E.D. La. 2013). And the Fifth Circuit has consistently held that "[i]ndividuals are not liable under Title VII in either their individual or official capacities." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 382 (5th Cir. 2003) (citing *Smith v. Amedisys Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002)).

Accordingly, this court adopts the logic of Judge Barbier in the Eastern District of Louisiana:

> Although the Fifth Circuit has not directly addressed the question of whether an employer's agent or employee may be held liable under the ADA, this Court recently concluded that in light of (a) the similarities between the definition of "employer" in Title VII and the ADA, (b) the similar purposes of the two statutes, (c) the Fifth Circuit's consistent holdings that individuals cannot be held liable under Title VII in either their individual or official capacities, and (d) the weight of authority outside of the Fifth Circuit, individuals are not subject to liability under Title I of the ADA.

*Franklin*, 936 F. Supp. 2d at 703 (citations omitted). Therefore, Iqbal's ADA claims against Pennington must be dismissed.

### D. Due Process Claim

Iqbal claims that his procedural due process rights[1] were violated because he "was not given an opportunity to be heard before he was terminated." Dkt. 13 ¶ 39. The Fifth Circuit has held that:

> In order to make out a Procedural Due Process claim in the context of a wrongful discharge complaint, a former public employee must allege with particularity: (i) the state or federal law or understanding giving rise to the property interest; (ii) the particular process that plaintiff was entitled to and failed to receive; and (iii) that the official's failure to provide these particular processes violated "clearly established constitutional law" at the time of the alleged infraction.

*Brown v. Texas A&M Univ.*, 804 F.2d 327, 333 (5th Cir. 1986) (citation omitted). Defendants argue that Iqbal cannot state a procedural due process claim because he did not have a property interest in his employment with the City. Dkt. 5 ¶ 17.

"The Circuit has been very clear that to demonstrate a constitutionally protected property interest, a plaintiff must 'allege with specificity the particular state rule, regulation, law or

---

[1] Defendants argue that Iqbal fails to assert both a procedural and a substantive due process claim. *See* Dkt. 5 at 6–7. The court does not read Iqbal's complaint to assert a substantive due process claim. That Iqbal's response addresses only the inquiry for *procedural* due process (Dkt. 13 ¶ 37) and fails to rebut Defendants' arguments about substantive due process confirms that Iqbal does not assert a substantive due process claim against Defendants. Therefore, the court does not consider Defendants arguments about whether Iqbal states a substantive due process claim because the court finds that such a claim has not been asserted.

understanding between the parties giving rise to the requirement of just cause prior to termination.'" *Gonzales v. Galveston Indep. Sch. Dist.*, 865 F. Supp. 1241, 1248 (S.D. Tex. 1994) (quoting *Brown*, 804 F.2d at 334). "Mere conclusory allegations that one has been deprived of a property interest in continued employment is insufficient to establish the existence of a constitutionally protected interest." *Id.* Examples of *potential* sources conferring a property interest include a "written contract for employment," a city charter, and an employee manual. *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993).

Here, Iqbal does not point to a specific source for his alleged property interest—nor does he allege "the particular process [he] was entitled to and failed to receive"—and his argument that "[p]ublic employees generally have a reasonable expectation of continued employment and therefore have a property interest" is an insufficient conclusory allegation. Dkt. 13 ¶ 36. Accordingly, Iqbal fails to state a procedural due process claim.[2] However, justice requires that Iqbal be afforded the opportunity to file an amended complaint consistent with *Brown* and *Moulton*.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. 5) is **DENIED** as to Iqbal's ADA claims against the City, and **GRANTED** as to Iqbal's due process claims against the City, and all claims against Pennington.

Iqbal's ADA claims against Pennington are **DISMISSED WITH PREJUDICE** because there is no set of facts that would allow Iqbal to state a claim against Pennington (or any other City employee for that matter) for individual liability under the ADA.

---

[2] Because the court finds that Iqbal fails to state a due process claim, the court does not reach Defendants' arguments regarding Pennington's qualified immunity.

However, Iqbal's due process claims against the City and Pennington are **DISMISSED WITHOUT PREJUDICE**, and the court grants Iqbal 30 days leave from the date of this order to file an amended complaint stating a due process claim. The court expresses no opinion on whether, should Iqbal amend his complaint, he can state or prove the resultant claims against either the City or Pennington.

Signed at Houston, Texas on January 24, 2020.

_____
Gray H. Miller
Senior United States District Judge