**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **NABEEL IQBAL** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **CIVIL ACTION NO.: 4:19−cv−03608** |
| | § | |
| | § | |
| **THE CITY OF PASADENA and DANIEL** | § | |
| **PENNINGTON** | § | |
| | § | **JURY DEMANDED** |
| *Defendants.* | § | |
| | § | |
| | § | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (SEALED)**

---

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Nabeel Iqbal, ("Plaintiff") files this Response to Defendants' Federal Rule of Civil Procedure Rule 56 Motion for Summary Judgment, and requests that the Court deny Defendants' motion.

Respectfully Submitted,

TB Robinson Law Group, PLLC
Terrence B. Robinson
Fed. Bar No. 14218
Texas Bar No. 17112900
TRobinson@TBRobinsonlaw.com
Tiffany Santhavi
Fed. Bar No.: 3513287
Texas Bar No.: 24103917
TSanthavi@TBRobinsonlaw.com
7500 San Felipe St., Suite 800
Houston, Texas 77063
Phone: (713) 568-1723
Facsimile: (713) 965-4288
**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF PROCEEDING ..................................................... 4

II.   STANDARD FOR SUMMARY JUDGMENT .................................................. 5

III.  EXHIBITS ............................................................................................. 5

IV.  SUMMARY OF ARGUMENT .................................................................. 5

V.   ARGUMENTS AND AUTHORITIES ......................................................... 6

   A.   PLAINTIFF HAS PLEAD SUFFICIENT FACTS SHOWING A DISCRIMINATION CLAIM UNDER THE ADA. ...................................................................................... 6

       i.   *The City's proffered reason for Plaintiff's termination is pretextual for discrimination.* 6

       ii.   *Plaintiff's disability prevents him from fully understanding the implication and complexity of questions that are posed to him.* ..................................................... 7

       iii.   *While the City admits that they knew Plaintiff was Autistic, they contend that the City did not know that Plaintiff was disabled.* ............................................................. 8

   B.   PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS FAILURE TO ACCOMMODATE CLAIM. ............................................................................. 10

       i.   *The City failed to accommodate Plaintiff; engage in the interactive process; and acted in bad faith by taking advantage of an opportunity to terminate a disabled employee.* ....... 10

       ii.   *Plaintiff **never** requested that the City and/or Investigator Reyes not inform his father of the incident or investigation.  In arguendo, if he did, this request would have been futile because the City contacted his father, **prior** to the investigation meeting, and informed his father of the allegations. Thus, when the meeting with Plaintiff took place his father already knew of the incident and the investigation.* ........................................................ 11

       iii.   *The City's reliance on the wrongful termination claim analysis is misplaced.* .......... 13

       iv.   *The City contends that Plaintiff "did not need" his father or a representative present during the investigative meeting.* ....................................................................... 13

       v.   *Without any supporting authorities or an expert opinion, the City contends that Plaintiff's alleged disability did not impair his ability to understand the questions posed to him and Plaintiff does not have any limitations based on his alleged disability.* ................. 15

       vi.   *The City contends if Plaintiff required assistance during the investigative meeting, the City would have complied.  However, the evidence is clear that the City knew Plaintiff required assistance and refused to accommodate him.* ...................................... 18

VI.  CONCLUSION ..................................................................................... 20

VII. CERTIFICATE OF SERVICE ................................................................. 21

# TABLE OF AUTHORITIES

***Cases***

*Bultemeyer v. Fort Wayne Cmty*. Sch., 100 F.3d 1281, 1285 (7th Cir. 1996) ............................ 20

*Chrysanthou v. Lone Star*, 404 F. Supp. 3d 1066, 1074 (S.D. Tex. 2018) ................................. 10

*Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394 (5th Cir. 1995) ......................................... 6

*Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)..................................................... 5

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)............................................................................. 5

*Taylor v. Phoenixville*, 184 F.3d 296, 314 (3d Cir. 1999) ............................................... 20

***Statutes***

42 U.S.C. § 1983......................................................................................... 4

42 U.S.C., §12101........................................................................................ 4

***Rules***

29 C.F.R. § 1630.2(j)(3)(iii)............................................................................. 7

Fed. R. Civ. P. 56....................................................................................... 4

Fed. R. Civ. P. 56(c) ................................................................................... 5

Federal Rules of Civil Procedure 12(b)(6).............................................................. 4

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

## I.    NATURE AND STAGE OF PROCEEDING

1.      This action was filed pursuant to the Americans with Disabilities Act, 42 U.S.C., §12101, et. Seq. ("ADA"), pursuant to 42 U.S.C. § 1983, and pursuant to the U.S. Constitution and the Texas Constitution to remedy acts of employment discrimination, failure to accommodate, failure to accord due process perpetrated against Plaintiff, and to remedy the violations of the laws of the United States.

2.      On November 12, 2019, Defendants filed a Motion to Dismiss for failure to State a Claim under Federal Rules of Civil Procedure 12(b)(6).  Plaintiff filed a Response to Defendants' Motion to Dismiss for Failure to State a Claim on December 17, 2019.

3.      On January 24, 2020, this Court found that Defendants' Motion to Dismiss should be denied in part and granted in part.  Defendants' Motion to Dismiss was denied as to Plaintiff's ADA claims against the City but granted as to Plaintiff's due process claims against the City, and all claims against Defendant Daniel Pennington ("Mr. Pennington").

4.      On October 27, 2020, this Court granted the Parties' Joint Motion to Extend Remaining Deadlines ("Docket Order").  Exhibit 1 – Dkt. 43.  Pursuant to the Docket Order, the discovery deadline for this action was December 29, 2020 and the deadline for dispositive motions and all other pre-trial motions was January 29, 2021.

5.      Defendants filed its Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56, on January 29, 2021.

6.      Plaintiff's deadline to respond to Defendants' Motion for Summary Judgment was extended to February 26, 2021 pursuant to the Court's order.  Exhibit 59 – Dkt. 49.

## II.    STANDARD FOR SUMMARY JUDGMENT

7.    "Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).   Thus, the moving party must show there are no triable issues of fact as to matters upon which it has the burden of proof at trial.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid a summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

## III.    EXHIBITS[1]

### INCORPORATION BY REFERENCE WITH EXHIBITS

In support of Plaintiff's Response to Defendants' Motion for Summary Judgment, Plaintiff incorporates Plaintiff's Motion for Summary Judgment with all exhibits (Dkt. 44 – 44-59) by reference as if fully set out herein.  Plaintiff likewise offers the following additional exhibits:

1. *Exhibit 59 – Docket Document No. 49*
2. *Exhibit 60 – Additional Pages to Deposition of Nabeel Iqbal*
3. *Exhibit 61 – Additional Pages to Deposition of Daniel Pennington*
4. *Exhibit 62 – Additional Pages to Deposition of Mauricio Reyes*

## IV.    SUMMARY OF ARGUMENT

Plaintiff's disability prevents him from understanding the implication and complexity of questions that are posed to him and the City knew or should have known that Plaintiff's Autism constituted a disability under the ADA.  Additionally, Plaintiff did not cause a breakdown in the interactive process; the City's reliance on the wrongful termination claim analysis is misplaced;

---

[1] For ease of reference the new exhibits listed have been numbered as a continuation of the exhibits filed with Plaintiff's Motion for Summary Judgment.

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

and Plaintiff's limitations due to his disability required an accommodation.  Ultimately, the City failed to accommodate Plaintiff and discriminated against Plaintiff on the basis of his disability. Thus, Defendants' Motion for Summary Judgment should be denied in its entirety.

## V.    ARGUMENTS AND AUTHORITIES

### A.  PLAINTIFF HAS PLEAD SUFFICIENT FACTS SHOWING A DISCRIMINATION CLAIM UNDER THE ADA.

i.    *The City's proffered reason for Plaintiff's termination is pretextual for discrimination.*

To establish a claim for disability discrimination under the ADA, Plaintiff must establish that he (1) suffers from a disability; (2) is qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or was treated less favorably than non-disabled employees.  *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).

The City contends that Plaintiff was terminated due to his misconduct which constituted a legitimate and non-discriminatory reason for Plaintiff's termination. However, as argued in Plaintiff's Motion for Summary Judgment, Plaintiff was subject to an adverse employment decision on account of his disability and was treated less favorably than non-disabled employees.

Plaintiff has plead sufficient facts to show that he suffers from a disability; was qualified for his job; was subject to an adverse employment action; and was treated less favorably than non-disabled employees.  Dkt. 44, Pgs. 16-28.[2]  Specifically,  Plaintiff has a mental impairment that substantially limits one or more of his major life activities; a record of his mental impairment dating back to when he was in elementary school; and the City regarded Plaintiff has having a disability.  *Id.* at 16-21.  Additionally, Plaintiff was qualified for his job with the City.  *Id*. at 21-

---

[2] Pages for Dkt. 44 reference the page numbers at the bottom, right hand corner of Dkt. 44 instead of the pages noted at the top of each page.

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

23.  Plaintiff was subjected to an adverse employment action when he was terminated from his job with the City.  *Id*. at 23.

Furthermore, Plaintiff was treated less favorably than non-disabled employees when he did not receive any prior warnings regarding his misconduct; not offered or required to attend counseling or training to correct his misconduct; and not allowed to appeal his termination like other non-disabled employees.  *Id*. at 23-26.  Plaintiff was also treated less favorably than other non-disabled employees because the City failed to follow its progressive disciplinary policies.  *Id*. at 27-28.

ii.  *Plaintiff's disability prevents him from fully understanding the implication and complexity of questions that are posed to him.*

Without any case law, medical expert opinion or *any authority* to support its contention, the City insists that Plaintiff, **an individual diagnosed with Autism, who has a borderline functioning IQ**, admitted he was fired "solely" for the "act of masturbating in an employee breakroom".  Dkt. 45, Page 11.  Thus, Plaintiff's disability did not play any role in the City's decision to fire Plaintiff.  *Id*.  However, the Plaintiff never admitted he was fired *solely* for the incident in the breakroom.  He stated that he was fired because he "did a wrong thing." Dkt. 44-17, Page 23:8-11.  In fact, when asked if Plaintiff told his father, whether he thought he was being fired for any reason other than the incident, Plaintiff testified that he did not know.  Exhibit 60, Additional Pages to Deposition of Nabeel Iqbal, Page 43:4-11.

The City further contends, that because Plaintiff admitted that he does not know how his father would have prevented his firing, an accommodation was not needed.  Dkt. 45, Page 8.  This again, completely overlooks the fact that Plaintiff is an Autistic individual with a borderline functioning IQ.  While Plaintiff may not be able to fully articulate *why or how* he needed

someone's assistance, he made it clear that he **"needed somebody's help, but nobody was there to help."**  Dkt. 44-17, Page 50:12-15.

In contrast to the City's unsupported contentions, Plaintiff has provided ample evidence of his disability and limitations throughout the course of this lawsuit, including expert opinions by two physicians that both stated Plaintiff was not competent to testify in a deposition.  Dkt. 24-2, ¶ 5-7.  Dkt. 36-1, Page 3.  Plaintiff's treating physician, Dr. Ly, a board certified psychiatrist, testified in a sworn affidavit that:

- Plaintiff has been diagnosed with Autistic Spectrum Disorder/Pervasive Development Disorder, and Anxiety Disorder NOS.  Dkt. 24-2, ¶ 5.
- In his opinion, Plaintiff was not competent to testify in a deposition.  *Id*. at ¶ 6.
- **Plaintiff suffered from low intelligence and is not able to fully understand the implication and complexity of questions that are posed to him**.  *Id*. at ¶ 7.

Further, Plaintiff's designated expert witness, Dr. Dan Polk, a clinical psychologist, stated in his expert report that Plaintiff **was "unable to intellectually comprehend what is involved with legal questioning."**  Dkt. 36-1, Page 3.  However, despite having ample opportunity to depose either Dr. Ly or Dr. Polk and/or challenge their findings with its own expert, the City merely contends that Plaintiff fully understands his admissions with no supporting authority.

       iii.   *While the City admits that they knew Plaintiff was Autistic, they contend that the City did not know that Plaintiff was disabled.*

The City contends that neither Plaintiff nor anyone else presented evidence to the City, of Plaintiff's alleged disability, before Plaintiff was fired. Dkt. 45, Page 5.  This is factually inaccurate.  Plaintiff cites to multiple instances in which the City was aware that Plaintiff was Autistic and/or had a disability, prior to his termination, in Plaintiff's Motion for Summary Judgment. Dkt. 44, Page 29.

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

Additionally, had the City allowed an expert on Autism to sit with Plaintiff, during the investigation meeting, as requested by both Plaintiff's father and direct supervisor, Ms. Minoo Monakes, the expert would have been able to explain Plaintiff's disability to the City.  In *arguendo*, even without an expert on Autism, had the City taken minimal time to research Autism they would have found that **Autism is specifically listed in the ADA** as a condition that substantially limits major life activities to meet the definition of disability. *See* 29 C.F.R. § 1630.2(j)(3)(iii).

Furthermore, **the City's contention that "[s]ince neither Pennington nor Anderson knew Plaintiff contended his autism constitutes a disability, neither took that after-the-fact assertion into consideration in making their recommendation" is further evidence that the Plaintiff required an accommodation in order to contend his Autism constitutes a disability.** Dkt. 45, Page 8.  The City attempts to simultaneously argue that it did not know that Plaintiff contended "his Autism constitutes a disability" when the City refused to allow any representative to assist Plaintiff **so that he could contend** that his Autism constituted a disability.  The City also never stopped to ask why his father and direct supervisor requested a medical professional to sit-in during the investigation meeting.  **Had the City accommodated Plaintiff, like his father and his direct supervisor requested, Plaintiff's father and/or a medical professional would have been able to explain that Plaintiff's Autism constitutes a disability.**

Based on these facts, the City's proffered reason for Plaintiff's termination was pretextual for discrimination and the City has discriminated against Plaintiff on the basis of his disability.

**B. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON HIS FAILURE TO ACCOMMODATE CLAIM.**

    i.    *The City failed to accommodate Plaintiff; engage in the interactive process; and acted in bad faith by taking advantage of an opportunity to terminate a disabled employee.*

To prevail on a failure to accommodate claim under the ADA, Plaintiff must prove that (1) Plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations. *Chrysanthou v. Lone Star*, 404 F. Supp. 3d 1066, 1074 (S.D. Tex. 2018).

As argued in Plaintiff's Motion for Summary Judgment, Plaintiff is a qualified individual with a disability; his disability and its consequential limitations were known by the City; and the City failed to make a reasonable accommodation for such known limitations. The first element of the failure to accommodate claim was addressed in Plaintiff's Motion for Summary Judgment under Section VII(A)(iii)) entitled *Plaintiff can establish that he was qualified for his job with the City*, and is incorporated herein by reference. Dkt. 44, Pgs. 21-23. Plaintiff's disability was known by the City as multiple employees referenced and/or acknowledged Plaintiff's mental impairment. Dkt. 44, Page 29. Additionally, Plaintiff's limitations, due to his disability, were known to the City because Plaintiff's father, who met with the interview panel for Plaintiff's interview with the City, discussed Plaintiff's limitations due to his disability. *Id*. at 31.

The ADA requires employers to engage in an interactive discussion after a request for an accommodation has been made. During the interactive process, the employer and employee identify the limitations imposed by the employee's disability and discuss available accommodations that would overcome the employee's limitations. 29 C.F.R. § 1630.2(o)(3). The City failed to engage in the interactive process when it denied Plaintiff's supervisor's and father's

request for a reasonable accommodation.  *Id*. at 32-33.  Plaintiff's father and supervisor's request

for an accommodation were valid requests under the ADA.  *Id*. at 34-35.   In *arguendo* even if

Plaintiff's father and supervisor did not request a reasonable accommodation on behalf of Plaintiff,

the City was still obligated to initiate the interactive process because Plaintiff's disability was open,

obvious, and apparent to the City.  *Id*. at 35-36.  Furthermore, the City took advantage of the

situation to terminate a disabled employee.  *Id*. at 36-39.

> ii.  *Plaintiff **never** requested that the City and/or Investigator Reyes not inform his father of the incident or investigation.  In arguendo, if he did, this request would have been futile because the City contacted his father, **prior** to the investigation meeting, and informed his father of the allegations. Thus, when the meeting with Plaintiff took place his father already knew of the incident and the investigation.*

The City makes numerous statements that either 1) are unsupported by expert testimony or

2) completely contradicted by the evidence at hand.

The City cites to Investigator Reyes' investigation report and declaration to support its

contention that "Plaintiff actually requested the City not inform his father of the incident or the

investigation." Dkt. 45, Page 5.  This is factually inaccurate.

Prior to and during the investigation meeting, Plaintiff **was never asked**, by the City, if he

needed his father, a medical professional, or any other individual, to sit with him during the

investigation meeting, despite his father and supervisor making these requests to the City.  During

the meeting, Plaintiff, an Autistic individual with a borderline functioning IQ, naturally begins to

panic and states that he does not want his father to be disappointed in him or for his father to be

upset.  Dkt. 44-19, Pgs. 4:170-172; 6:242-243.  However, even if Plaintiff did not want the City to

inform his father, **the City already informed his father** of the incident and investigation **prior** to

the investigation meeting with Plaintiff.  Dkt. 44-14, ¶ 4-5, 10-11.  While Plaintiff's father and

direct supervisor's requests for an accommodation occurred **prior** to the investigation meeting, if

the Plaintiff allegedly requested that the City not inform Plaintiff's father of the incident and investigation, the alleged request occurred **during** the investigation meeting and was futile. Further, Plaintiff's father actually made a request for the accommodation after he was informed of the incident and investigation by the City.   Plaintiff was not aware of the accusations until the investigation meeting with Investigator Reyes and thus, Plaintiff's father knew of the allegations and investigation before Plaintiff.

Thus, the City's basis for not allowing his father to sit-in during the investigation meeting, when Plaintiff never requested that the City not inform his father of the incident or investigation, and when the City already informed his father of the incident and investigation, lacks credibility.

Additionally, any breakdown in the interactive process was not due to Plaintiff's alleged request that the City not inform Plaintiff's father of the incident.   Instead, the breakdown in the interactive process was due to the City's refusal to allow any individual to sit with Plaintiff during the investigation meeting and its refusal to consider or offer any alternative accommodations.

The City's contention is also contradicted by Mr. Pennington's testimony that he did not allow Plaintiff's father to sit-in during the interview because Plaintiff's father "did not witness the incident"; "[P]laintiff seemed to understand well enough on his own"; and he did not feel it was necessary, not because Plaintiff allegedly requested that the City not inform his father of the incident or investigation.  Dkt. 44-20, Page 24:1-3, 14-15, 20-25.  Exhibit 61, Additional Pages to Deposition of Daniel Pennington Page 25:1-3.

Interestingly, the City fails to provide **any basis** as to why a medical professional was not allowed to sit-in, during the investigation meeting, as Plaintiff's father and direct supervisor requested prior to the investigation meeting.

iii.   *The City's reliance on the wrongful termination claim analysis is misplaced.*

The City cites to *Burch v. Coca-Cola Co.* and *Edwards v. Wal-Mart Stores, Inc.*, to support its contention that Plaintiff's wrongful termination claim fails as a matter of law because Plaintiff failed to show that the City fired him to avoid accommodating his limitations in the workplace. However, the City's premises is flawed because these cases are inapplicable to the case at hand.

Contrary to Plaintiff's case, in *Burch* and *Edwards*, the plaintiffs failed to request a reasonable accommodation at the time of their termination.  Thus, the court held that their employer's decision to terminate was not actionable under a failure to accommodate claim and instead should be evaluated under a wrongful termination claim, which required the plaintiffs to show that their employers terminated them in order to avoid accommodating their impairments at the workplace.  However, Plaintiff's father and supervisor both requested an accommodation, on Plaintiff's behalf, which constituted a valid accommodation request pursuant to the ADA.  Dkt. 44-49, Page 10, No. 2.

Further, in this Court's opinion regarding Defendants' Motion to Dismiss, the Court evaluated Plaintiff's claim as a failure to accommodate claim, stating, "this claim turns solely on whether Defendants failed to make reasonable accommodations." Dkt. 19, Pgs. 5-9.

Thus, Plaintiff's claims are properly evaluated as a failure to accommodate claim, and not, a wrongful termination claim and he is not required to show that the City terminated him in order to avoid accommodating his impairments in the workplace.

iv.   *The City contends that Plaintiff "did not need" his father or a representative present during the investigative meeting.*

The City contends that the purpose of the investigative meeting was "merely to determine" whether the allegations against Plaintiff were true and "there was no need for someone to defend

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

Plaintiff's indecent act" thus, "Pennington informed Zafar Iqbal that no one else would be permitted to sit [i]n that meeting." Dkt. 45, Page 7. However, Plaintiff **never** received an opportunity to defend himself or have a representative assist him during the termination or investigative process. Instead, Plaintiff was terminated **the same day** the investigative meeting took place. In fact, when Plaintiff met with Mr. Pennington, later that day, during his termination meeting, his father and/or a medical professional were still not present.

While the City contends that Mr. Pennington would allegedly contact Plaintiff's father if he needed his father's emotional support or if Investigator Reyes encountered any problems, neither individuals are experts in Autism and/or have any medical training to determine whether Plaintiff required emotional support. Dkt. 45, Page 7. The fact of the matter is, unlike Plaintiff's father or his direct supervisor, individuals that both requested that either his father and/or an expert sit-in during the investigative meeting and individuals that are both familiar with Plaintiff and his disability, neither Mr. Pennington nor Investigator Reyes met Plaintiff prior to the investigation and termination meeting; were familiar with his disability; or had any expertise in handling matters involving an Autistic individual. Exhibit 62, Additional Pages to Deposition of Mauricio Reyes, Pgs. 8:14-25; 9:1-2,11-19; 10:10-12; 21:11-17. Exh. 61, Pgs. 8:8-13, 24-25; 9:1-5; 10:16-17. There is simply no evidence that the City contacted **anyone** with experience working with Autistic individuals or the Plaintiff to assist him during the investigation meeting.

The City then claims that it "granted Plaintiff's father's alleged request for accommodation by meeting with Plaintiff's father regarding the incident." However, this was **not** an accommodation. This meeting was held, **after** Plaintiff was terminated, and obtained counsel to file a lawsuit against the City. This was a settlement discussion and not an accommodation.

> v. *Without any supporting authorities or an expert opinion, the City contends that Plaintiff's alleged disability did not impair his ability to understand the questions posed to him and Plaintiff does not have any limitations based on his alleged disability.*

The City continuously contends that Plaintiff's "alleged disability did not impair Plaintiff's disability to understand Investigator Reyes' factual questions" and thus, no accommodation was required for the investigation meeting.  Dkt. 45, Page 7.  However, this assumption is flawed for many reasons.  First, as previously stated, Mr. Pennington and Investigator Reyes' 1) had no prior relationship with Plaintiff to understand his limitations and needs; 2) are not experts in Autism; 3) do not have any type of medical background or expertise.

Secondly, this was not the only reason why an accommodation was requested.  The accommodation was requested to 1) help Plaintiff understand the investigative process and what he was accused of; 2) to assist Plaintiff to remain calm during the process so he did not panic due to his disability; and 3) explain his actions in relation to his disability so his disability could be taken into consideration.

Thirdly, the City claims that "Plaintiff's counsel's demand to have a medical professional and Plaintiff's father be present at Plaintiff's deposition" proved Plaintiff was "capable of understanding and answering questions at his deposition, without any conversation or input by the medical professional or Plaintiff's father, both of whom attended the deposition."  Dkt. 45, Page 7.  However, the City is entirely missing the point that having Plaintiff's father and doctor, present during his deposition, helped Plaintiff remained calm and understand the proceedings.  This is evident when listening to the recording of Plaintiff's interview with Investigator Reyes versus his deposition video.  Dkt. 44-19.  Dkt. 44-50.  In fact, during the investigation meeting with Investigator Reyes, Plaintiff made multiple comments that clearly showed he was in extreme distress and none of these comments were made during his deposition.  Examples include Plaintiff:

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

- Asking if he was going to go to jail.  Exh. 18. 4:161.
- Stating he was "very nervous" or worried.  *Id*. at 4:165, 180.
- Repeatedly stating the situation was "scary" and that he was "very scared".  *Id*. at 4:171-172; 5:183-184; 6:266.
- Repeatedly stating that his "heart was beating", likely meaning his heart was racing.  *Id*. at 4:171-172; 5:188; 7: 281-282, 315.
- Asking whether he was in "deep trouble". *Id*. at 5:192.
- Asking whether he was being charged with something or if he was in trouble. *Id*. at 5:207, 211.
- Repeatedly stating he was "very stressed right now" or under deep stress. *Id*. at 6:258; 7:276, 281, 298, 311.
- Stating that he was very worried, stressed and feared that he would lose his job then stating that his "heart was beating".  *Id*. at 7:276-282.
- Plaintiff then asks if the incident will be on the local news.  *Id*. at 8:357.

While some of Plaintiff's comments may seem normal for an individual that has been accused of sexual harassment, given Plaintiff's well documented disability and his father and supervisor having concerns because he is "autistic and stresses and panics over small things easily," the evidence is clear that Plaintiff needed some assistance during the investigation meeting.  Additionally, his father testified that Plaintiff had an "emotional breakdown" after the meeting and his father had trouble calming him down.  Dkt. 44-10, Pgs. 45:21-25; 46:1-6.

However, instead of providing testimony from a medical expert and/or deposing Plaintiff's expert witnesses, the City relies solely on two individuals with no medical background, Mr. Pennington and Investigator Reyes, to support its contention that Plaintiff did not require an accommodation and that "Plaintiff's father presence in the investigative meeting was not necessary for any reason."  Dkt. 45, Page 15.  However, two individuals', who have no medical training or background, subjective opinions are not sufficient to overcome Plaintiff's experts' medical opinions as to what Plaintiff did and did not understand and what Plaintiff did or did not need, in terms of an accommodation.

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

Additionally, again without any supporting authorities or expert opinions, the City insists that "Plaintiff's father's request to be in the room would not serve to accommodate any limitations from which Plaintiff allegedly suffers because of his disability". Dkt. 45, Page 15. However, the City fails to cite to any case law or medical opinion to supports its contention. Further, the City never offered an alternative accommodation or explanation as to why the accommodation was unreasonable or why the accommodation would constitute a hardship on the City. Instead, the City simply insists that Plaintiff did not have any limitations due to his disability merely because Investigator Reyes testified that Plaintiff "understood"; and Mr. Pennington testified that Plaintiff "was capable of answering all of [Investigator] Reyes' questions at the meeting"; "[P]laintiff seemed to understand well enough on his own" and that "Plaintiff was fully capable of answering such questions again without assistance" during his deposition. Dkt. 44-20, Pgs. 24:1-3, 14-15, 20-25. Dkt. 45, Page 15. Dkt. 45-7, ¶ 6. Exh. 62, Page 22:3-13, **However, neither Investigator Reyes nor Mr. Pennington are remotely qualified to make a determination as to what Plaintiff, an individual with Autism and a borderline functioning IQ, that they both met once, does or does not understand or whether he does or does not have any limitations due to his disability.**

In fact, during his deposition, Investigator Reyes testified that prior to his meeting with Plaintiff, he never met Plaintiff before, and he did not recall whether he ever had any training regarding how to handle investigations with individuals that are mentally disabled; or if his department had any special protocols or procedures involving how to conduct an investigation with a mentally-disabled individual. Exh. 62, 10:10-12; 21:11-17. Investigator Reyes could not even recall if he ever had a case with an individual that was mentally disabled or if he had any specialized knowledge regarding interviewing the mentally disabled. *Id*. at 21:18-20; 22:14-18.

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

His entire basis as to why Plaintiff understood his questions was because "he was able to answer them." *Id*. at 22:3-13.  Investigator Reyes also testified to his educational background and work history, none of which included any type of medical training or experience remotely related to working with individuals with Autism. *Id*. at 8:14-25; 9:1-2, 11-19.

Similar to Investigator Reyes, Mr. Pennington **never** met Plaintiff until the date of his termination.  Exh. 61, 10:16-17.  Mr. Pennington also does not have a medical background or training. *Id*. at 8:8-13, 24-25; 9:1-5.  When asked what his training with the Americans with Disability Act consisted of Mr. Pennington stated he did not recall. *Id*. at 33:23-25; 34:1.

The City has offered **no evidence** that indicates Investigator Reyes and/or Mr. Pennington were even **remotely qualified** to make the determination that Plaintiff understood the questions asked of him and that Plaintiff had any limitations due to his disability.  In contrast, Plaintiff has offered expert testimony from two physicians, one of which is a board certified psychiatrist and the other a clinical psychologist, whom have both stated that Plaintiff suffered from low intelligence and cannot fully understand the implications and complexity of questions that are posed to him.  Dkt. 24-2, ¶ 7.  Dkt. 36-1, Page 3.  Furthermore, Plaintiff's direct supervisor, Ms. Monakes, who worked closely with Plaintiff for the entire five years of his employment knew Plaintiff panicked and stressed out easily, due to his disability, and Plaintiff's father knew Plaintiff would likely have an emotional breakdown, due to his disability, if he did not have a representative sit with him during the investigation meeting.

      *vi.*    *The City contends if Plaintiff required assistance during the investigative meeting, the City would have complied.  However, the evidence is clear that the City knew Plaintiff required assistance and refused to accommodate him.*

The City claimed that "if for some reason Plaintiff needed his father at the meeting, the City would have had Plaintiff's father attend the meeting." Dkt. 45, Page 15.  However, Plaintiff's

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

direct supervisor and father requested that Plaintiff's father and/or an expert on Autism attend the meeting because he was Autistic and panics or stresses easily.  Ms. Monakes specifically expressed concerns that Plaintiff might panic in this meeting and asked if they should involve an expert on Autism or Plaintiff's father in the meeting.  Dkt. 44-23.  Dkt. 44-5, Pgs. 26:9-16; 27:2-10.  Despite the City failing to ask Plaintiff if he needed anyone to attend the meeting with him and/or inquiring about his disability and his limitations, the City determined that requests from two individuals, that were familiar with Plaintiff and his disability, were insufficient to show the City that "Plaintiff needed his father at the meeting."

The City also claims that Mr. Pennington contacted Plaintiff's father, "as a courtesy', however, this is directly contradicted by Mr. Pennington's testimony where he testified that he contacted Plaintiff's father "[b]ased on a comment that was made by Ms. Monakes."  Dkt. 44-20, Pgs. 22:25; 23:1-5.

The City's statement that "Plaintiff's father wished to interfere with the investigation to posit a theory Plaintiff's own admissions roundly disprove" is factually inaccurate.  Dkt. 45, Page 15.  Contrary to the City's statement, Plaintiff's father specifically testified the following when asked why he wanted to attend the meeting:

> "Knowing that my son is disabled, and he was emotionally -- **he may have an emotional breakdown, and which he did.** At the time **he got very nervous** and he called me, **dad, I'm very scared**. He told me that after the meeting. So, **I had to calm him down. I received several calls from him.** He could not do his work properly, and **I had to calm him down. I wanted to be there to comfort him and help him with his interrogation.**" Dkt.44-10, Pgs. 45:21-25; 46:1-9.

Regardless of whether Mr. Pennington would have made the same recommendation for termination, Plaintiff was still entitled to an accommodation during the investigation meeting as required under the ADA.  The City's automatic denial of Plaintiff's father and direct supervisor's

*Plaintiff's Response to Defendants' Motion for Summary Judgment*

requests for an accommodation, without offering any alternatives or explanation, caused a breakdown in the interactive process required by the ADA.

While employees with physical disabilities may have a more obvious need for accommodations, in cases involving employees with mental disabilities, like Plaintiff, the communication process becomes more difficult. *Bultemeyer v. Fort Wayne Cmty*. Sch., 100 F.3d 1281, 1285 (7th Cir. 1996).  This required the City to meet Plaintiff half-way and engage in the interactive process to find an accommodation that was deemed reasonable.  **"To raise the bar for triggering the interactive process any further would essentially nullify the process."** *Taylor v. Phoenixville*, 184 F.3d 296, 314 (3d Cir. 1999).

Based on these facts, the City failed to accommodate Plaintiff; failed to engage in the interactive process; and acted in bad faith by taking advantage of an opportunity to terminate a disabled employee.

## VI.    CONCLUSION

Plaintiff's disability prevents him from understanding the implication and complexity of questions that are posed to him and the City knew or should have known that Plaintiff's Autism constituted a disability under the ADA.  Additionally, Plaintiff did not cause a breakdown in the interactive process; the City's reliance on the wrongful termination claim analysis is misplaced; and Plaintiff's limitations due to his disability required an accommodation.  Ultimately, the City failed to accommodate Plaintiff and discriminated against Plaintiff on the basis of his disability. Thus, Defendants' Motion for Summary Judgment should be denied in its entirety.

## VII.    CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2021, I served a copy of the foregoing *Plaintiff's Response to Defendants' Motion for Summary Judgment* was electronically filed with the Clerk of the Court using the CM/ECF system and served on all attorney(s) and/or parties of record via the CM/ECF service.


_____
Terrence B. Robinson

*Plaintiff's Response to Defendants' Motion for Summary Judgment*